HARRIS INVESTMENT COMPANY, a Corporation, and JOHN E. HARRIS, v. GURNEY P. HOOD, as Commissioner of Banks for the State of North Carolina, etc.

GURNEY P. HOOD, as Commissioner of Banks for the State of North Carolina, etc., v. WALLACE L. HARRIS.

167 So. 25.

Opinion Filed March 31, 1936.

*A. L. Brogden* and *Blount & Jones,* for Appellants;
*Axtell & Rinehart* and *R. R. Axtell,* for Appellee.

BUFORD, J.—Gurney P. Hood as Commissioner of Banks for the State of North Carolina, exhibited his bill of complaint in the Circuit Court of Duval County, Florida, against Harris Investment Company, a corporation organized under the laws of Florida, John E. Harris, individually and as incorporator of and as a stockholder in Harris Investment Company, and Wallace L. Harris individually and as an incorporator of and as a stockholder in Harris Investment Company, and John E. Harris, Jr., individually and as an incorporator of and as a stockholder in Harris Investment Company.

The allegation of the bill of complaint showed that the North Carolina Bank & Trust Company was a bank organized under the laws of North Carolina and doing business in that State as a banking institution prior to March 3, 1933. That on that date it was closed under the general Proclamation of the President during the term known as the banking holiday, and that when that was ended the Bank was not permitted to reopen, but continued to operate under restrictions until May 21, 1933, when the complainant, under the laws of North Carolina, took possession of the Bank and thereafter, complying with the laws of North Carolina, filed in the office of the Clerk of the Superior Court of Guilford County, North Carolina, notice of possession of the Bank. That thereafter, on June 22, 1933, complainant, in his official capacity, levied an assessment against each and every of the stockholders of said Bank

equal to the stock liability of each stockholder in said Bank, computing the liability on the par value of the stock which was held. That a copy of the levy was, in accordance with the laws of North Carolina, docketed in the office of the Clerk of the Superior Court for Guilford County, N. C., as a judgment against each of said stockholders. That Harris Investment Company as the apparent owner of 404 shares of said bank stock was assessed for the sum of $4040.00 and judgment was entered thereon under the laws of North Carolina against the said Harris Investment Company for said sum and costs on the said 22nd day of June, 1933. And it is alleged that said assessment or judgment bears interest from July 3, 1933, at the rate of 6% per annum.

It is further alleged that:

"The Harris Investment Company was incorporated under the laws of the State of Florida on the 1st day of July, A. D. 1930; that its incorporators and the amount of stock subscribed by each are as follows, to-wit:

John E. Harris, Jr. ................ten (10) shares;
Wallace L. Harris ................ten (10) shares;
Tyndall W. Harris ................ten (10) shares;

that the said corporation's officers are as follows, to-wit: John E. Harris, President; Wallace L. Harris, Vice-President; and that prior to his death on or about the 1st day of December, A. D. 1932, Tyndall W. Harris was the Secretary and Treasurer; that the total amount of the authorized capital stock of the said corporation is Five Thousand and No/100 ($5,000.00) Dollars.

"IX.

"Your orator further alleges that on the 3rd day of April, A. D. 1931, the said John E. Harris, the then owner

of One Hundred Thirty-five (135) shares of the said Bank stock, transferred to the Harris Investment Company the said One Hundred Thirty-Five (135) shares of Bank stock, said transfer being evidenced on the stock records of said Bank by Certificate No. 2907.

"X.

"That on the said 3rd day of April, A. D. 1931, the said Wallace L. Harris, the then owner of One Hundred Thirty-five (135) shares of the said Bank stock, transferred to the Harris Investment Company the said One Hundred Thirty-five (135) shares of bank stock, said transfer being evidenced on the stock records of said Bank by Certificate No. 2906.

"XI.

"That on the said 3rd day of April, A. D. 1931, the said Tyndall W. Harris, the then owner of One Hundred Thirty-four (134) shares of the said Bank stock, transferred to the Harris Investment Company the said One Hundred Thirty-four (134) shares of Bank stock, said transfer being evidenced on the stock records of said Bank by Certificate No. 2905.

"XII.

"Your orator further alleges that the authorized capital stock of the said Harris Investment Company was only Five Thousand and No/100 ($5,000.00) dollars, which said amount if fully paid in, which your orator does not believe to be the case, would be barely enough to cover the par value of the said Four Hundred Four (404) shares of Bank stock, said Four Hundred Four (404) shares being the combined holdings of said Bank stock by the defendants herein, John E. Harris, Wallace L. Harris and the late Tyndall W. Harris.

"Your orator is informed and believes and alleges upon information and belief, that the said Harris Investment Company never conducted any business; that the said company was owned and controlled by the defendants, John E. Harris, Wallace L. Harris and, prior to his death, Tyndall W. Harris; that the defendant, the Harris Investment Company, has no other assets than the said Four Hundred Four (404) shares of said Bank stock; that there was no consideration existing for the transfer of the said Four Hundred Four (404) shares.

"From the foregoing facts, your orator further alleges that the defendant, the Harris Investment Company, was merely a fictitious corporation, or a mere screen organized and/or used for the illegal purpose of concealing the identity of the true, equitable and beneficial owners of said Bank stock standing in its name, and for the purpose of enabling said true, equitable and beneficial owners to avoid the liability of any assessment which might be made against the stock of said Bank. That any benefits that have or would have accrued to the said Harris Investment Company, by reason of its apparent ownership of said Four Hundred Four (404) shares of Bank stock, have or would have been received by the said John E. Harris, Wallace E. Harris and the late Tyndall W. Harris.

## "XIII

"That the defendant, John E. Harris, Jr., one of the incorporators of and an apparent stockholder in the said Harris Investment Company, had knowledge of the aforesaid facts set forth in Paragraph XII hereof, and as such incorporator of and stockholder in said Harris Investment Company, is indebted to your orator accordingly.

## "XIV

"By reason of the foregoing facts, John E. Harris, individually and as an incorporator of and as a stockholder in the Harris Investment Company, and as the true, equitable and beneficial owner of One Hundred Thirty-five (135) shares of said Bank stock, is indebted to your orator in the sum of Thirteen Hundred Fifty and No/100 ($1,350.00) Dollars, with interest thereon at the rate of six (6%) per cent. per annum from the 3rd day of July, A. D. 1933.

## "XV.

By reason of the foregoing facts, Wallace L. Harris individually and as an incorporator of and as a stockholder in the Harris Investment Company, and as the true, equitable and beneficial owner of One Hundred Thirty-five (135) shares of the said Bank stock, is indebted to your orator in the sum of Thirteen Hundred Fifty and No/100 ($1,350.00) Dollars, with interest thereon at the rate of six (6%) per cent. per annum from the 3rd day of July, A. D. 1933."

Personal service was had on Harris Investment Company and on John E. Harris and on John E. Harris, Jr., it being shown that John E. Harris and John E. Harris, Jr., are one and the same person. Service by publication was attempted to be had on Wallace L. Harris. Special appearance was filed in behalf of Wallace L. Harris, as follows:

"Comes now the defendant, WALLACE L. HARRIS, by his undersigned solicitors, and appears solely exclusively and specially in this cause for the sole and only purpose of testing the jurisdiction of this said Court over the person of the defendant, Wallace L. Harris, by virtue or by reason of the order of service by publication heretofore entered

herein and the service of process purported to have been had upon this defendant, Wallace L. Harris, pursuant to such order of service by publication, and for no other purpose whatsoever."

Motion to quash the service by publication was also filed on the following grounds:

"1. Because it affirmatively appears from the allegations and prayers of the bill of complaint in this cause that the plaintiff in said cause seeks exclusively an *in personam* judgment and/or decree against this defendant.

2. Because this court cannot, pursuant to an order of service by publication, acquire jurisdiction of the person of this defendant for the purpose of rendering an *in personam* judgment or decree.

"3. Because no service of process has been had upon this defendant in the manner prescribed by law so as to confer upon this Court jurisdiction of the person of this defendant."

The prayer for relief against Wallace L. Harris is as follows:

"That Wallace L. Harris individually and as an incorporator of and as a stockholder in the Harris Investment Company, be decreed to be indebted to your orator in the sum of Thirteen Hundred Fifty and No/100 ($1,350.00) Dollars, with interest thereon from the 3rd day of July, A. D. 1933, at the rate of six (6%) per cent. per annum."

Motion to dismiss was filed on behalf of John E. Harris and upon behalf of Harris Investment Company. The motion to dismiss was denied. The motion to quash the service on Wallace L. Harris was granted.

Harris Investment Company and John E. Harris entered appeal from that part of the order denying motion to dismiss the bill of complaint. The complainant entered

cross appeal from that part of the order quashing the service by publication attempted to be had on Wallace L. Harris.

The appeal of the complainant in the court below can be disposed of shortly. The Circuit Court of Duval County is without authority to enter a personal decree or a decree *in personam* such as is prayed in this cause agaainst Wallace L. Harris, a citizen and resident of the State of Georgia, based upon service by publication, and unless that relief could be had Wallace L. Harris is not a necessary party to this suit. If Wallace L. Harris is a stockholder of Harris Investment Company he will be bound as such stockholder by any decree that is binding that may be entered and which becomes binding on the corporation of which he is such a stockholder.

The other question which we have to determine is whether or not the bill of complaint alleges sufficient facts to state a cause of action against Harris Investment Company and John E. Harris.

The appellant states the question to be determined by this Court in this regard, as follows:

. . "Is a Bill of Complaint sufficient, against a motion to dismiss, which seeks to hold liable a transfer of bank stock for the statutory super-added liability, who transfers his stock to a corporation in which he is a stockholder with two others similarly situated at a time two years prior to the declared insolvency of the bank, where the bill charges on information and belief that the transferee of the said bank stock never conducted any business, that it had no other assets save said bank stock, that there was no consideration for the transfer of said shares of bank stock, and that the transferee corporation was fictitious and organized for the illegal purpose of conceal-

ing the equitable and beneficial owner of said bank stock so as to avoid liability under statute, without alleging that the bank was insolvent, or approaching insolvency, or that the transferee was insolvent, at the time of the alleged transfer, and that such was known to the transferer.

"Where a judgment is rendered by the Courts of a foreign state against a Florida corporation, without the aid of personal service upon, or a voluntary appearance by, such corporation, will the courts of Florida, in an action at common law or in equity, recognize the validity of such judgment even though it was rendered in accordance with the statutes of the foreign state."

We think the second question is better stated by the appellees, as follows:

"Does a Florida corporation, by becoming a stockholder of record in a North Carolina State Bank, submit itself to the jurisdiction and laws of the latter state, in respect to the determination of liability for an assessment of said bank stock?"

"(b) And when the North Carolina law has been complied with in levying such assessment, will the fact that same was levied by an administrative officer preclude the application of the full faith and credit clause of the U. S. Constitution?"

We hold that this question should be determined adversely to the contentions of the appellant on authority of the case of Joseph A. Broderick, Superintendent of Banks of New York, v. Mary Roaner, *et al.,* 79 Law. Ed. 1100. Mr. Justice Brandies, delivering the opinion of the Court, first quoted the statute of New York, which is to all intents and purposes like that of North Carolina in regard to the liability of stockholders in banks. He then makes the following statement:

"The Bank of the United States is a corporation organized under the banking law of New York and has its places of business in New York City. Its outstanding capital stock is $25,250,000.00 represented by 1,010,000 shares of $25 par value. On November 17, 1933, Joseph A. Broderick as Superintendent of Banks of the State of New York, brought in the Supreme Court of New Jersey, this action against 557 of its stockholders who are residents of New Jersey, to recover unpaid assessments levied by him upon them pursuant to law.

"The defendant moved to strike out the complaint on the ground, among others, that, by reason of Section 94 (b) of the Corporation Act of New Jersey (2 Comp. Stat. p. 1656), it failed to set out a cause of action enforceable in any court of that State. The section, first enacted March 20, 1897, provides:

" 'No action or proceeding shall be maintained in any court of law in this State against any stockholder, officer or director of any domestic or foreign corporation by or on behalf of any creditor of such corporation to enforce any statutory personal liability of such stockholder, officer or director for or upon any debt, default or obligation of such corporation, whether such statutory personal liability be deemed penal or contractural, if such statutory personal liability be created by or arise from the statutes or laws of any other state or foreign country, and no pending or future action or proceeding to enforce such statutory personal liability shall be maintained in any court of this state other than in the nature of an equitable accounting for the proportionate benefit of all parties interested, to which such corporation and its legal representatives, if any, and all of its creditors and all of its stockholders shall be necessary parties.'

608

"Broderick seasonably claimed that to sustain the asserted bar of the statute would violate Article 4, Section 1 of the Federal Constitution, which provides that: 'Full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State;' and the Legislation of Congress enacted pursuant thereto. The trial court sustained the motion to strike out the complaint, Broderick v. Abrams, 112 N. J. L. 309, 170 A. 214, on the ground that the statute of the State constituted a bar to the action. Judgment against the plaintiff with costs was entered in favor of each of the defendants, and the Judgment was affirmed by the Court of Errors and Appeals, 'for the reasons expressed in the opinion' of the trial Court. An appeal to this Court was allowed."

And that part of the opinion which is especially applicable is as follows:

"The power of a state to determine the limits of the jurisdiction of its courts and the character of the controversies which shall be heard therein is subject to the limitations imposed by the Federal Constitution. McKnett v. St. Louis & S. F. R. Co., 292 U. S. 230, 238, 78 L. Ed. 1227, 1229, 54 S. Ct. 690. A 'State cannot escape its constitutional obligations (under the full faith and credit clause) by the simple device of denying jurisdiction in such cases to courts otherwise competent.' Kenney v. Supreme Lodge, L. O. M. 252 U. S. 411, 415, 64 L. Ed. 638, 640, 40 S. Ct. 371, 10 A. L. R. 716. It is true that a State can legislate only with reference to its own jurisdiction. Bonaparte v. Appeal Tax Ct., 104 U. S. 592, 26 L. Ed. 845; Olmstead v. Olmstead, 216 U. S. 386, 54 L. Ed. 530, 30 S. Ct. 292, 25 L. R. A. (N. S.) 1292, and that the full faith and credit clause does not require the enforcement of every right which has ripened into a judgment of another

state or has been conferred by its statutes. See Bradford Electric Light Co. v. Clapper, 286 U. S. 145, 160, 76 L. Ed. 1026, 1035, 52 S. Ct. 571, 82 A. L. R. 696; Alaska Packers Asso. v. Industrial Acci. Commission, No. 465, October Term, 1934, 294 U. S. 532, ante, 1044, 55 So. Ct. 518). But the room left for the play of conflicting policies is a narrow one. One state need not enforce the penal laws of another. Huntington v. Attrill, 146 U. S. 657, 36 L. Ed. 1123, 13 S. Ct. 224. A State may adopt such system of courts and form of remedy as it sees fit. It may in appropriate cases apply the doctrine of *forum non convenius*. Anglo-American Provision Co. v. Davis Provision Co., 191 U. S. 373, 48 L. Ed. 225, 24 S. Ct. 92. But it may not, under the guise of merely affecting the remedy, deny the enforcement of claims otherwise within the protection of the full faith and credit clause, when its courts have general jurisdiction of the subject matter and the parties. Christmas v. Russell, 5 Wall, 290, 300, 18 L. Ed. 475, 478. Compare Atchison, T. & S. F. R. C. v. Sowers 213 U. S. 55, 53 L. Ed. 695, 29 S. Ct. 397; Tennessee Coal, I. & R. Co. v. George, 233 U. S. 354, 58 L. Ed. 997, 34 S. Ct. 587, L. R. A. 1916 D, 685. For the States of the Union, the Constitutional limitation imposed by the full faith and credit clause abolished, in large measure, the general principle of international law by which local policy is permitted to dominate rules of comity.

"Here the nature of the cause of action brings it within the scope of the full faith and credit clause. The statutory liability sought to be enforced is contractural in character. The assessment is an incident of the incorporation. Thus the subject matter is perculiarly within the regulatory power of New York, as the State of incorporation. 'So much so,' as was said in Converse v. Hamilton, 224 U. S.

243, 260, 56 L. Ed. 749, 785, 32 S. Ct. 415, Ann. Cas. 1913D, 1292 'that no other State properly can be said to have any public policy thereon. And what the law of Wisconsin (New Jersey) may be respecting the relative rights and obligations of creditors and stockholders of corporations of its creation, and the mode and means of enforcing them is apart from the question under consideration.' Compare Bernheimer v. Converse, 206 U. S. 516, 532, 51 L. Ed. 1163, 1175, 27 S. Ct. 755. In respect to the determination of liability for an assessment the New Jersey Stockholders submitted themselves to the jurisdiction of New York. For 'the act of becoming a member (of a corporation) is something more than a contract, it is entering into a complex and abiding relation, and as marriage looks to domicile, membership looks to and must be governed by the law of the State granting the incorporation.' Modern Woodmen v. Mixer, 267 U. S. 544, 551, 69 L. Ed. 783, 785; 45 S. Ct. 389. Compare Supreme Court R. A. v. Green, 237 U. S. 531, 59 L. Ed. 1089, 35 S. Ct. 724, L. R. A. 1916A 771; Hancock Nat. Bank v. Farnum, 176 U. S. 640, 44 L. Ed. 622, 20 S. Ct. 509; McDermott v. Woodhouse, 87 N. J. Eq., 615 618, 619, 101 A. 375. Obviously recognition could not be accorded to a local policy of New Jersey, if there really were one, of enabling all residents of the State to escape from the performance of a voluntarily assumed statutory obligation, consistent with morality, to contribute to the payment of the depositors of a bank of another State of which they were stockholders."

Therefore, we hold that the judgment entered upon the assessment made by the Commissioner of Banks of the State of North Carolina should be given full faith and credit by the courts of the State of Florida.

We now come to the question as to whether or not the

allegations of the bill of complaint were sufficient to withstand motion to dismiss.

We construe the allegations of the bill of complaint to be sufficient to show that the Harrises, being owners of certain shares of the bank stock referred to, organized a Florida corporation with its capital stock limited to $5,000.00 for the sole purpose of assigning and transferring to that corporation the shares of bank stock in the bank referred to which were at the time held by them and that the only purpose of organizing this corporation and assigning these shares of bank stock to it was to evade the personal liability which each of the Harrises incurred by becoming owners of the bank stock and thereby making it impossible for either the bank or the Receiver of the bank, should it become insolvent, to realize upon the stock liability of the stockholders of those particular shares of stock. The corporation was not so organized that it could be made to respond to and pay a stock assessment. It was so organized that the stockholders in the corporation could not be required to pay into the corporation a sufficient sum to meet the assessment which might be made against the bank stock. If the total capital stock of the corporation was fully paid for by the subscribers and with that money the corporation governed entirely by the bank stockholders paid back to each of the stockholders the par value of the bank stock and thereby procured an assignment of the bank stock, there was left in the Treasury less than $1,000.00 to meet a potential assessment against this holder of the bank stock of $4040.00.

The allegations of the bill of complaint are sufficient to show that the entire transaction was for the purpose of creating a corporate entity to be controlled entirely by the bank stockholders who transferred and assigned their bank

stock to the corporation so that if the bank stock proved a good investment and paid dividends their corporation would likewise pay those dividends on to the stockholders in that corporation, while if the bank became insolvent and it became necessary to levy a capital stock assessment there would be no assets available to the bank or the Receiver on these particular shares of capital stock. If a transaction of this sort is to be countenanced by the courts, then designing stockholders may at any time avoid all statutory liability for stock assessments by the very simple practice of organizing a corporation with capital stock equivalent only to that of the bank stock to be transferred to it, assign the bank stock to such corporation and leave the other stockholders, as well as depositors and other creditors of the bank, without that protection and security which is provided by the statute authorizing stock assessments such as that under consideration here. We do not mean to say that shares of bank stock may not be issued to, transferred to or held by corporations, the capital stock of which is not sufficient to warrant the enforcement of the payment of a stock assessment on such bank stock; but if the corporation is created for the sole purpose of being owned and controlled by bank stockholders and to have assigned to it the bank stock held in the name of such bank stockholders and to avoid the possibility of personal liability of such bank stockholders and at the same time so as to make it impossible for the bank or a Receiver thereof, to realize on the stock assessment against such so created corporation, then we think it becomes clearly a fraud on the bank and its creditors and the assessment made against the corporation by and for a bank which has gone into the hands of a Receiver or Liquidator may be enforced against the stockholders of the corporation as individuals to the extent

of the liability which would have stood against them, had such fraudulent transfer of stock not been made and the bank stock had remained in the name of the stockholder who had so fraudulently transferred such bank stock.

It appears that this doctrine is supported by the opinions and judgments in the cases of Third Avenue Co. v. Keely, 111 Fla. 46, 149 Sou. 30; Saffold Bros. Produce Co. v. Winn-Lovett Gro. Co., 111 Fla. 60, 149 Sou. 1; Biscayne Realty & Ins. Co. v. Ostend Realty Co., 109 Fla. 1, 148 Sou. 560.

In Fletcher's Cyclopedia Corporations, Vol. 1, page 61, Sec. 44, it is said:

"The doctrine of corporate entity is not permitted to stand in the way of defeating fraud. It follows that it is idle to promote a corporation for the purpose of endeavoring to accomplish fraud or other illegal acts under the cloak of the corporate fiction. Where this is attempted, courts of law, equity or bankruptcy, do not hesitate to tear aside the veil of corporate entity and to look beyond it at the actual and substantial beneficiaries. A notable instance is found in cases where it is sought to delay, hinder and defraud creditors by means of 'dummy' incorporations. The courts have uniformly held that there is no magic in incorporation and refuse to apply the doctrine of corporate entity to enable such schemes to be successful."

In the case of Corker v. Soper, 53 Fed. (2nd Series) p. 190, the actual conditions are much like these here under consideration and the Circuit Court of Appeals, speaking through Judge Hutchison, said:

"Appellant's troubles do not arise from the fact that the corporate entity of the Laurens Company has been disregarded. The judgment of the court below fully recognized and gave effect to that entity. It found that, though it

did in fact exist, it existed as a mere creature organized and maintained for the purpose of holding, not really, but as agent for appellant, the stock which he caused to be put in its name, that appellant at all times remained the real owner of the shares, and that the law will look through the subterfuge of pretended ownership to fasten liability upon the shareholder to whom, in fact, the shares belong.

"The view which the court below took, and which we take, does not require, in fact, it prevents the conclusion that the corporation in this case was a fiction, having no corporate existence. In this view, the judgment, thoroughly consistent with itself, stands upon the sound foundation on which alone a just disposition of this case may rest. It correctly gives effect to the general intent of the appellant to create a corporation for the purpose of placing in its name his and his wifes' stock in the bank, because what was done made that intent effectual. It with equal correctness denies effect to the particular intent which induced him to act as he did, to avoid liability on the stock, because the things done by appellant were not in accord but wholly inconsistent, with that intent. For while the things done did place the certificates of stock in the name of the Laurens Company, they did not divest appellant of his beneficial ownership of them, but left him the real owner, and therefore, liable to assessment. The case is ruled by Germania Nat. Bank v. Case, 99 U. S. 628, 25 L. Ed. 448; Ohio Valley Nat. Bank v. Hulitt, 204 U. S. 162, 27 S. C. 179, 51 L. Ed. 423; Houghton v. Hubbell (C. C. A.), 91 F. 453."

In Davis v. Stevens, 7 Federal Cases, No. 3653, it was held:

"A purchaser of stock in a national bank, who, to conceal his ownership and escape individual responsibility, causes

it to be transferred to another person pecuniarily irresponsible, is, so long as he remains the actual owner, a shareholder, within the meaning of Section 12 of the Act of June 3, 1864 (13 Stat. 102), now Sections 5139 and 5151 of the Revised Statutes of the United States, and liable as such."

In the case of Germania Nat. Bank of New Orleans v. Case, Receiver, etc., 25 L. Ed. 448, the Supreme Court of the United States held: "transfer for the mere purpose of avoiding his liability to the company or its creditors is fraudulent and void and he remains still liable."

In the case of Ohio Valley Nat. Bank v. Hulitt, Receiver, 51 L. Ed. 423, it was said:

"Assuming, then, the established doctrine to be that the mere pledges of national bank stock cannot be held liable as a shareholder so long as the shares are not registered in his name, although an irresponsible person has been selected as the registered shareholder, we deem it equally settled, both from the terms of the statute attaching the liability and the decisions which have construed the Act, that the real owner of the shares may be held responsible, although in fact the shares are not registered in his name. As to such owner the law looks through subterfuges and apparent ownerships and fastens the liability upon the shareholder to whom the shares really belong."

For the reasons stated, the orders appealed from should be affirmed and the costs of the appeal and cross-appeal are assessed equally against the parties and the cause remanded for further proceedings not inconsistent with the views herein expressed.

So ordered.

Affirmed and remanded.

WHITFIELD, C. J., and TERRELL and BROWN, J. J., concur.

DAVIS, J., dissents in part.

DAVIS, P. (dissenting in part).—There has been pointed out no law of the State of North Carolina which forbade a Florida corporation to become a stockholder in a bank of that state. All corporations are organized for the purpose of avoiding (as distinguished from evading) personal liability in a perfectly legitimate way. The men who undertake to organize corporations and who pay large sums of money to the state for corporate franchises, would scarcely ever do so, if the corporate fiction could be swept aside on the threadbare assertion that to give it judicial countenance means that the stockholders escape personal legal liability for acts done in the corporate name.

I think it would have been entirely proper for the State of North Carolina to have abolished "holding" companies as eligible bank stock owners. But I see no justification for the Supreme Court of Florida undertaking to remedy a *casus omissus* in North Carolina's statute law by writing a judicial opinion that in effect says that it was unlawful for a Florida corporation to have owned and held North Carolina bank stock unless it set up and retained in its assets sufficient funds to cover a bank stock assessment against the stock which its charter permitted it to hold and which it violated no law in owning. Would this court be justified in saying that because a pauper owned stock in a North Carolina bank and therefore cannot be made to respond for a bank stock assessment on it, that the courts of Florida should thereupon make a judicial declaration that such pauper's rich uncle residing in Florida should be held liable on the frustrate claim as the "next of kin" in liability to the one charged but unable to respond? It seems to me that what is being done in this case on the question of "penetrating the corporate veil" in this transaction is no different

in principle from that involved in the illustration just given, therefore I dissent from that part of the opinion of Mr. Justice BUFORD which so holds.