*In re* NOWELS ESTATE

NOWELS v NOWELS

Docket No. 65208. Submitted March 17, 1983, at Detroit.—Decided
     August 16, 1983. Leave to appeal applied for.

Grace R. Nowels died and was survived by her daughter, Martha
     Nowels, and her son, John R. Nowels. Grace Nowels executed a
     trust in 1970. The trust was amended seven times. The seventh
     amended trust provided that the trust property was to be
     divided into two equal shares which were to fund separate
     trusts for the settlor's children, Martha and John Nowels.
     John's share was to be paid to him, free of trust, as soon as
     practicable following Grace's death. Martha was to receive,
     during her lifetime, monthly installments of income and princi-
     pal sufficient for her comfortable support and maintenance.
     The instrument provides that, upon Martha's death, the re-
     mainder of her trust is to go into separate trusts for "each of
     her then surviving children". If Martha dies leaving no surviv-
     ing children, her trust property is to be held in trust for John
     Nowels and, if he predeceases Martha or upon his subsequent
     death, the trust property is to be added to separate trusts for
     John's children. At the time of Grace's death, Martha was 54
     years old, had never married and had no children. John was 58
     years old, married and had five natural children. In March,
     1980, Martha began adoption proceedings in California for the
     purpose of adopting her cousin, Thomas A. Lancaster, who was
     then 42 years of age, married, with three children of his own.
     The Superior Court of the State of California, County of San
     Diego, entered a judgment approving the adoption. Martha
     Nowels petitioned the Oakland Probate Court to determine
     that the adoptee, Thomas Lancaster, was a remainder benefi-
     ciary of her share of the Grace Nowels trust. Following a
     hearing, the court, Norman R. Barnard, J., ruled that the
     settlor did not intend to include adult adopted persons within
     the class of Martha Nowels's children. The court also found
     that the adoption was for the purpose of subverting the set-

REFERENCE FOR POINTS IN HEADNOTE
80 Am Jur 2d, Wills § 1205.

tlor's intent and that it would be inequitable to allow the adult adoptee to deprive Grace's five natural grandchildren of their rightful inheritance as intended and expected by the settlor. Martha appealed. *Held:*

The statutory presumption that adopted persons are included within the term "child" and similar terms should not be enforced where there has been an abuse of the adoption process and where the end result would violate the settlor's probable intent and normal expectations. The trial court's determination that the adoption was for the purpose of subverting the testator's intent is supported by the evidence.

Affirmed.

Trusts — Wills — Adoption — Judicial Construction.

The statutory presumption that adopted persons are included within the term "child" and similar terms should not be enforced where there has been an abuse of the adoption process and where the end result would violate the settlor's probable intent and normal expectations (MCL 700.128; MSA 27.5128).

*Bodman, Longley & Dahling* (by *Walter D. Koch* and *Martha G. Goodloe),* for plaintiff.

*Bebout, Potere, Cox & Hughes, P.C.* (by *Arthur R. Cox* and *Dorothea A. Allen),* for defendant.

Before: T. M. Burns, P.J., and Cynar and P. J. Marutiak,* JJ.

P. J. Marutiak, J. Petitioner Martha Nowels appeals as of right from a probate court determination that Thomas A. Lancaster is not a remainderman under a trust established by Martha's mother, Grace R. Nowels.

Grace R. Nowels died on December 23, 1979, and is survived by her daughter Martha Nowels and her son, John R. Nowels. Grace Nowels executed a trust in 1970. The subject of this appeal is the seventh and final amendment to the trust executed April 20, 1979, which amended the instru-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ment in its entirety. The seventh amended trust provided that the trust property was to be divided into two equal shares which were to fund separate trusts for the settlor's children, Martha and John Nowels. John's share was to be paid to him, free of trust, as soon as practicable following Grace's death. Martha was to receive, during her lifetime, monthly installments of income and principal sufficient for her comfortable support and maintenance. The instrument provides that, upon Martha's death, the remainder of her trust is to go into separate trusts for "each of her then surviving children". If Martha dies leaving no surviving children, her trust property is to be held in trust for John Nowels and, if he predeceases Martha or upon his subsequent death, the trust property is to be added to the separate trusts for John's children.

At the time of Grace's death, Martha was 54 years old, had never married and had no children. John was 58 years old, married and had five natural children. In March, 1980, Martha began adoption proceedings in California for the purpose of adopting her cousin, Thomas A. Lancaster, who was then 42 years of age, married, with three children of his own. On May 30, 1980, the Superior Court of the State of California, County of San Diego, entered a judgment approving the agreement of adoption.

On January 26, 1981, Martha Nowels petitioned the Oakland County Probate Court to determine that the adoptee, Thomas Lancaster, was a remainder beneficiary of her share of the Grace Nowels trust. Following a hearing, the probate court ruled that the settlor did not intend to include adult adopted persons within the class of Martha Nowels's children. The court also found that the adoption was for the purpose of subvert-

ing the settlor's intent and that it would be inequitable to allow the adult adoptee to deprive Grace's five natural grandchildren of their rightful inheritance as intended and expected by the settlor. Martha appeals.

In resolving a dispute concerning the meaning of a will or trust, the court's sole objective is to ascertain and give effect to the intent of the testator or settlor. *In re Kurtz Estate,* 113 Mich App 769, 772; 318 NW2d 590 (1982).

The Michigan Revised Probate Code creates a rebuttable presumption that adopted persons are included within the term "child" or similar terms:

"In the construction of a trust agreement or will, whether executed on, before, or after June 23, 1966, the term 'child', 'grandchild', 'issue', 'heir', 'descendant', 'beneficiary' or other equivalent term shall be construed to include any adopted person and his descendants whether natural or adopted unless a contrary intention appears by the terms of the instrument or unless the estate devised to the 'child', 'grandchild', 'issue', 'heir', 'descendant', 'beneficiary' or equivalent person vested before June 23, 1966, in an already ascertained person or persons who have an immediate indefeasible right of enjoyment or a present indefeasible fixed right of future enjoyment in the estate." MCL 700.128; MSA 27.5128.

Plaintiff argues, and we agree, that the terms of the amended trust do not evidence a specific contrary intention sufficient to overcome the general statutory presumption that adopted persons are included within the class of Martha's children. We do not believe, however, that the Legislature intended the statutory presumption to be automatically enforced in all cases without regard to the circumstances surrounding the adoption procedure. Notwithstanding our conclusion that the terms of the trust do not evidence an intent to

exclude adopted persons generally, this Court is convinced that it should not enforce the statutory presumption where there has been an abuse of the adoption process and where the end result would violate the settlor's probable intent and normal expectations.

While it is apparently a question of first impression in this state,[1] other jurisdictions have refused to allow an adult adoptee to take through his adopted parent and thereby defeat the probable intent of the testator or settlor. In *In the Matter of the Estate of Griswold,* 140 NJ Super 35; 354 A2d 717 (1976), the testator died in 1952 leaving a will which directed that the residue of the estate be divided equally between two trusts, one for the benefit of son Alfred for his lifetime and one for the benefit of son Ely for his lifetime. The remainder of each trust was left to "such children or issue of deceased children of my said son as shall then be living, per stirpes". Each trust provided for gifts over in the event of death of the life tenant without leaving a child or issue of a deceased child. In 1955 or 1956, son Ely married a woman who had a son from a prior marriage who was then 31 years of age. In 1965, when Ely was 56 and his stepson 41, Ely instituted proceedings in California to adopt his stepson. Ely died in 1973, survived only by his adopted son. Upon Ely's death, the trustee filed a final accounting and sought instructions as to the final distribution of the trust property. Claims were made by Ely's adopted son and by the four surviving children of Ely's brother Alfred.

The New Jersey court found nothing to indicate that the testator considered the possibility that his son would adopt an adult. Therefore, the Court

---

[1] *Cf. In re Wallin Estate,* 88 Mich App 775; 279 NW2d 310 (1979).

examined the language of the instrument and the attending circumstances in order to ascertain the testator's probable intent:

"The test here is probable intent. That means at the time of execution of the will. In ascertaining this, the courts will give primary emphasis to testator's dominant plan and purpose as they appear from the entirety of his will when read and considered in the light of the surrounding facts and circumstances. The court's endeavor is to put itself in testator's position in so far as possible in the effort to accomplish what he would have done had he 'envisioned the present inquiry.' [Citations omitted.]

\* \* \*

"It may be that this testator would not have drawn a distinction between a natural child and an adopted child who was taken into Ely's home as a child and became a part of his household and family. *In re Coe* [42 NJ 485; 201 A2d 571 (1964)] says that should be presumed unless testator explicitly reveals a contrary purpose. However, in view of the matters above discussed it seems to me clear what testator's view would have been if he had envisioned the present inquiry. The suggestion of diverting the remainder, which would otherwise pass to the Griswold family, by adopting an adult, he would have strongly disapproved. Diverting the trust by adopting a man 41 years old (even though a stepson-in-law) living thousands of miles away with three children of his own, who might some day succeed to the Griswold inheritance, he would have disapproved even more strongly." 140 NJ Super 47-48.

Later in the opinion, the Court discussed the different motivations, feelings and attitudes involved in the adoption of children as distinguished from the adoption of adults:

"The basic purpose of child adoption is to provide and protect the welfare of children, to provide homes and families and security of homeless children, and to pro-

vide children for couples who desire to have children to love and raise and maintain. A substantial factor here is the duty and obligation of support and maintenance." 140 NJ Super 51.

On the other hand, the Court observed that adoption of adults is ordinarily quite simple and almost in the nature of a civil contract whereby the parties agree to assume toward each other the legal relationship of parent and child.[2] 140 NJ Super 52.

In addition, the *Griswold* Court noted that enforcement of a presumption treating adult adoptees the same as natural children without consideration of the circumstances surrounding the adoption would be an open invitation to fraud:

"Indeed, application of the rule of *[In re] Coe* [42 NJ 485; 201 A2d 571 (1964)] to adult adoptions would in my view be an open invitation to the diversion of remainders, 'treasure hunts' and even the sale of filiations to obtain the benefit of remainders in trusts established many years ago. Without safeguards ordinarily present in *child* adoptions, including the obligation of support, the risk is substantial and should not be taken." 140 NJ Super 55.

After examining the circumstances surrounding Ely's adoption of his adult stepson, the *Griswold* Court concluded that the primary motive for the adoption was to gain the benefit of the trust remainder for Ely's wife and son, and to divert it from the children of Griswold's son Alfred. The

---

[2] While we recognize that many of the distinctions between child and adult adoptions stated in *In the Matter of Griswold,* 140 NJ Super 35; 354 A2d 717 (1976), are not applicable in Michigan, (see MCL 710.22[a]; MSA 27.3178[555.22][a] and MCL 710.60[2]; MSA 27.3178[555.60]), we believe the differing motivations and considerations surrounding adult adoptions as opposed to child adoptions are relevant to our determination of the settlor's probable intent.

Court therefore held that even, if New Jersey law created a presumption that the adult adoptee would take as a "child or issue of deceased child" of the testator, the circumstances were such that the adoption and the claim of the adult adoptee were an abuse of the adoption process and of the will, and a violation of the testator's intent.

The reasoning of *Griswold* was followed in a similar case in *In the Matter of the Estate of Nicol,* 152 NJ Super 308; 377 A2d 1201 (1977). In that case the testatrix's will created a trust and directed that, upon its termination, the trustee was to divide the trust property into as many equal parts "as there are issue (or lineal descendants) of myself then living" and pay over an equal share to each. The issue was whether the quoted provision included adults adopted by the testatrix's son, Alexander, several years after her death.

Although there was a presumption that adopted children take the same as natural children, the Court found that the presumption is not automatically applicable to adult adoptees but, rather, found it necessary to examine the circumstances to determine the testatrix's probable intent. The Court stated:

"The distinction between adopted children and adopted adults is by no means an idle one in the search for the probable intent of a testator. It is one thing to ascribe to a testator a contemplation of the possibility of that which has come to be relatively commonplace, namely, the adoption of a child at some time in the future by a member of the family or other relative, or any other prospective beneficiary under a will. Frequently, in such cases, the child is acquired in infancy, although the child may be older where a spouse adopts a stepchild. In both instances, however, the child is

reared as one's own by the adopting parent and is recognized as such among the family and friends.

"But it is quite another matter where the adopted person is an adult. It would be difficult to apply to such cases the sensible underlying considerations of *Coe* and *[In re] Thompson* [53 NJ 276; 250 A2d 393 (1969)]. One would be hard-pressed to ascribe to a testator, in the absence of any expression thereon or of clarifying attendant circumstances, a probable intent to include an adopted adult among the children or issue of a testamentary beneficiary. It is extremely unlikely that a testator would foresee the likelihood that his or her child, or any other prospective beneficiary, might at some time in the future adopt an adult. It is equally improbable that an adopted adult would be embraced in the bosom of the family members other than the adopting parent, as would an adopted child. * * *

"It is to be noted that in the case under review, unlike *Griswold,* one cannot point to specific 'attending circumstances' from which to infer a probable intent on the part of testatrix not to include adopted adults as children or issue of her son Alexander. But the absence of such circumstances may in itself support the inference, particularly where, as here, testatrix' *[sic]* son was unmarried when she died and the record is devoid of any evidence that she could possibly have foreseen the possibility that if or when her son married, his wife would be considerably older than he, with children the youngest of whom would be only 13 years younger than the stepfather and the eldest 10 years younger. While a stranger to the adoption, motivated by high-minded principles, would be quick to accept and welcome the relationship between an adopting parent and an adopted child, we cannot say that this would be true in the case of an adopted adult." 152 NJ Super 319-320.

See, also, *e.g., Elliott v Hiddleson,* 303 NW2d 140 (Iowa, 1981); *Minary v Citizens Fidelity Bank & Trust Co,* 419 SW2d 340 (Ky App, 1967). *Cf. Evans v McCoy,* 291 Md 562; 436 A2d 436 (1981).

We agree with the reasoning of the cases discussed above. The presumption created in MCL

700.128; MSA 27.5128 does not operate in favor of an adult adoptee where an examination of all attendant circumstances indicates that the probable intent of the testator or settlor was not to include the adult adoptee as a beneficiary.

Turning to the facts of the present case, we believe the trust demonstrates an intention on the part of the settlor to dispose of her entire estate. While John Nowels's share passed outright, Martha was given only a life estate, with income and principal to be distributed for her support and maintenance. Martha was not given the power to appoint the remainder beneficiaries of her share of the trust property.

It appears from the testimony in the probate court that a rift occurred in the relationship between John and Martha sometime prior to their mother's death. According to Martha's testimony in the probate court and declaration made in the California court prior to the adoption, her reasons for adopting Thomas Lancaster were (1) her need for emotional support and to have someone whom she could regard as family, and (2) her desire that Thomas inherit property through her.[3] In addition, Thomas Lancaster stated in a declaration made prior to the adoption:

"Martha has told me that she wants to adopt me so that she will have someone who will receive property through her in the event of her death and she wants someone who she can regard as her own child and sole heir."

We believe the record supports a conclusion that the adoption was effected, at least in part, for the

---

[3] Martha was aware that she could leave her own property to Thomas by will, and had, in fact, named Thomas as beneficiary under her will.

purpose of allowing Thomas to take under the terms of the Grace Nowels trust, thereby preventing John Nowels and his children from taking Martha's share upon her death. It is our opinion that, had Grace Nowels envisioned the present circumstances, it would have been her probable desire and intent that the adult adopted son should not take as a child of Martha. We will not permit an adult adoptee to inherit through his adopted parent where to do so would frustrate the probable intent and natural expectations of the settlor. The probate court's order of June 4, 1982, is affirmed for the reasons stated herein.

Affirmed.