# STATE OF MICHIGAN

# COURT OF APPEALS

BRIAN A. TRUPP,

       Petitioner-Appellee,

v

DEBORAH NAUGHTON and DONNA
DUNCAN,

       Respondents-Appellants.

UNPUBLISHED
May 26, 2015

No. 320843
Roscommon Probate Court
LC No. 11-054135-TV

Before: GLEICHER, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

Respondents, Deborah Naughton and Donna Duncan, appeal by leave granted[1] an order of the probate court that terminated the Elaine Radlick-Trupp Revocable Living Trust Agreement as Amended and Restated (the trust), at the request of petitioner, Brian Trupp. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS

Paul and Elaine Trupp had five children. In the late 1990's, they set up an estate plan, including the trust document at issue in this case. Only three of the children – Brian, Donna, and Deborah—were beneficiaries of the trust. At the time of her death, the trust contained two real properties. One was a lakefront vacation home on Higgins Lake, known as Triangle Drive, and the second was Elaine's residence in New Baltimore, referred to as Blakely Street. Elaine died on December 13, 2008.

The three parties continued to use Triangle Drive for the first two years after Elaine's death without regard to the schedule mandated by the trust. Brian initially paid the taxes, insurance, and utilities on Triangle Drive without contribution from Deborah or Donna. In April of 2011, Brian was unable to resolve his dispute with his sisters regarding payment of expenditures for Triangle Drive. He removed his personal property from the house and had not

---

[1] *Brian A Trupp v Deborah Naughton,* unpublished order of the Court of Appeals, entered August 4, 2014 (Docket No. 320843).

returned since May 2011. Both Deborah and Donna continued to use the property with Deborah paying all of the bills.

Brian had taken possession of the Blakely Street home immediately following Elaine's death, but disregarded the mandate of the trust to obtain an appraisal of the property and distribute cash equal to the fair market value of the property to Donna. Brian used the property exclusively until June 19, 2010, when it was sold for $160,000. No payment was made to Donna after the sale.

Brian requested the probate court supervise the trust, stating that the other beneficiaries had not paid their respective trust obligations for the expenses of the cottage and had locked him out of the property. Brian requested that the court terminate the trust, sell the cottage, and reimburse Brian for expenses he had paid that were obligations of respondents.

At the conclusion of the trial, the probate court found that the parties were required to evenly divide the expenses of Triangle Drive, with Brian and Deborah each receiving credit for the amounts they expended. The court granted petitioner's request to terminate the trust, and to allow Triangle Drive to be sold under Article IV, Section 4 B of the trust. As to Blakely Street, the probate court found that the only question was the amount of cash petitioner was required to pay Donna under the terms of the trust, i.e., whether the mortgage amount should be subtracted from the cash value of the property that petitioner was obligated to pay her. The probate court found that there was a latent ambiguity in the term "fair market value" as used in the trust, and that parole evidence could be used to resolve the ambiguity. The court relied on the testimony of the attorney who drafted the trust, Paul T. Garvey, who testified that it was Elaine's intention that the value of the property be determined by looking at the net value after deducting the mortgage balance. The parties were willing to accept the sales amount of $160,000 as establishing the value of the property in lieu of an appraisal, so the trial court ordered that Brian pay Donna the $64,222.00 net value of the Blakely Street property. The probate court denied respondents' motions for new trial and reconsideration. Deborah and Donna now appeal as of right.

## II. STANDARDS OF REVIEW

"[T]his Court reviews de novo the language used in wills and trusts as a question of law." *In re Reisman Estate*, 266 Mich App 522, 526; 702 NW2d 658 (2005). Where a probate court sits without a jury, its findings are reviewed for clear error. *In re Bennett Estate*, 255 Mich App 545, 549; 662 NW2d 772 (2003). "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id*. The probate court's ultimate dispositional rulings are reviewed for an abuse of discretion. *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). The trial court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes. *Id*.

## III. TERMINATION OF THE TRUST

On appeal, Deborah and Donna argue that the trial court erred in terminating the trust because the terms of the trust provided no basis on which the trust could be terminated. They

claim that discontinuation of the trust was not justified where the probate court could have instead imposed rules by which the trust would operate. We disagree.

The trust provided that the beneficiaries were to make a schedule each year for use of the cottage, and determine an appropriate method of allocating the expenses of maintaining the cottage. It further provided that the cottage could be sold and the trust terminated under particular conditions, including when the trustees determine that discontinuing the trust was justified or determine that it was not economically sound to continue. The trust also provided that the trustee could terminate the trust should termination be in the best interests of the beneficiaries because of unforeseen circumstances. The probate court concluded that the actions of the parties indicated that they had determined that terminating the trust was justified. Deborah and Donna argue that, in so doing, the probate court fabricated a trust provision in terminating the trust. However, the probate court stated that the trust was terminated under the termination provision of the trust that stated termination could occur "[w]hen the trustees . . . determine that discontinuation of the trust is justified." While only one of the co-trustees explicitly sought termination of the trust, the trustees did not attempt to fulfill the requirements of the trust.

The undisputed facts reveal the co-trustees knew the provisions of the trust because they were present as the trust was amended, and made no attempt to implement the provisions of the trust after Elaine's death. The beneficiaries continued to use the cottage in total disregard of the requirements of the trust to form a schedule and rules for cottage use. Brian became frustrated with his sisters' failure to pay their share of cottage expenditures to the extent that he removed his personal property from the cottage and has removed himself from any use of or participation in maintaining the cottage, while Deborah and Donna continued to use the cottage and pay for its maintenance. Although Deborah and Donna note that they attempted to establish rules with an operating agreement, an attempt for all the beneficiaries to meet to discuss operation of the trust with the attorney who drafted the trust failed to produce any progress. The trust provisions provided for termination of the trust in circumstances such as the one before us. MCL 700.7410(1) provides that a trust may be terminated when the purposes of the trust have become impossible to achieve. Here, where the purpose of the trust was to allow the parties to share in the use of the cottage, the probate court reasonably found that the purpose could not be met where none of the parties could follow the terms of the trust. The trial court did not abuse its discretion in granting petitioner's motion to terminate the trust.[2]

---

[2] Deborah and Donna suggest that the trust should not have been terminated because there was another asset that would potentially flow into the trust from Elaine's estate. However, it appears that there was no equity in that asset and accordingly, no error in the trial court's determination that it would not have affected its decision. They also suggest that the trial court erred by not ordering that Deborah's share be held in trust and paid in installments. However, Article X, § 10.1 of the trust provided that trust assets should be distributed to the beneficiaries if the trust were terminated. Moreover, we limited the issues that could be raised on appeal to those raised in respondents' delayed application for leave to appeal, see *Brian A Trupp v Deborah Naughton,* unpublished order of the Court of Appeals, entered September 26, 2014 (Docket No. 320843), and this issue was not previously raised.

## IV. PAROL EVIDENCE

Donna next argues that the probate court erred in calculating the amount due her as a result of the sale of the Blakely Street home. The trust called for Donna to receive the fair market value of the home based on an appraisal. Donna argues that the probate court should not have considered extrinsic evidence to determine the meaning of the unambiguous term "fair market value." We disagree.

When considering a dispute concerning the meaning of a trust, a court's sole objective is to determine and carry out the intent of the settlor. *In re Nowels Estate,* 128 Mich App 174, 177; 339 NW2d 861 (1983); *In re Maloney Trust,* 423 Mich 632, 639; 377 NW2d 791 (1985). The settlor's intent is ascertained from the trust document itself, unless there is ambiguity. *In re Kostin,* 278 Mich App 47, 53; 748 NW2d 583 (2008), citing *In re Maloney Trust,* 423 Mich at 639. A court may not construe clear and unambiguous language in such a way as to rewrite it. *In re Reisman Estate,* 266 Mich App at 527.

Here, Article 2, § 2 the trust provided, in relevant part:

> 1. In the event that the Settlor, at the time of her death, owns a personal residence . . . , other than the Cottage property described below, such residential real estate shall be distributed, outright and free of trust, to the Settlor's son, BRIAN TRUPP, should he survive the Settlor. BRIAN TRUPP shall assume, pay and hold the Trust harmless from all encumbrances on the property. . . .

> 2. In the event that the Residential Real Estate described in Paragraph 1 above is distributed to BRIAN TRUPP, an amount of cash equal to the fair market value of such Residential Real Estate shall be distributed, outright and free of trust, to the Settlor's daughter, DONNA DUNCAN, should she survive the Settlor. In this regard, the Trustee shall obtain an appraisal of the Residential Real Estate . . . and such appraisal shall be conclusive as to value. . . .

Brian failed to abide by the trust provisions to appraise the home and distribute the fair market value of the home to Duncan. He eventually sold the home for $160,000, which the parties accepted as the value of the home. At the time of the sale, the home was encumbered by a $95,778 mortgage. The probate court found a latent ambiguity as to "fair market value" and relied on the testimony of the attorney who wrote the trust, Paul Garvey, to determine that the fair market value included a deduction of the mortgage balance. Consequently, the trial court ordered petitioner to pay Duncan $160,000 minus the $95,778 mortgage balance on the home when it was sold for a total of $64,222.

Where an ambiguity exists, the court must look outside the document in order to carry out the settlor's intent, and may consider the circumstances surrounding the creation of the document and the general rules of construction. *In re Kostin,* 278 Mich App at 53, citing *In re Butterfield Estate,* 405 Mich 702, 711; 275 NW2d 262 (1979). "A patent ambiguity exists if an uncertainty concerning the meaning appears on the face of the instrument and arises from the use of defective, obscure, or insensible language." *In re Estate of Reisman,* 266 Mich App at 527 n 5, quoting *In re Woodworth Trust,* 196 Mich App 326, 327-328; 492 NW2d 818 (1992). In

contrast, "[a] latent ambiguity exists where the language and its meaning is clear, but some extrinsic fact creates the possibility of more than one meaning." *Id*. A latent ambiguity "does not readily appear in the language of a document, but instead arises from a collateral matter when the document's terms are applied or executed." *City of Grosse Pointe Park v Michigan Municipal Liability and Property Pool*, 473 Mich 188, 198; 702 NW2d 106 (2005). "[N]ot only may extrinsic evidence be used to clarify the meaning of a latent ambiguity, but it may be used to demonstrate that an ambiguity exists in the first place and to establish intent." *In re Kremlick Estate*, 417 Mich 237, 241; 331 NW2d 228 (1983).

Garvey, who had been performing Elaine's estate planning since 1999, testified that Elaine wanted to treat Brian and Donna equally as a reward for their care and attention. Elaine's intent was that Brian and Donna would inherit the same net value, explaining that Brian would receive the residence and Donna the equivalent cash value that petitioner received. Garvey recalled explicitly discussing the issue with Elaine and that Donna should have received the value of the residence minus the amount of the mortgage. Garvey admitted that he could have more carefully drafted her plan but that the provisions of the trust together demonstrate that he meant net value. It was Elaine's intent that Brian receive the house and pay the mortgage, and that Donna receive cash equal to the value of the residence deducting the cost of the mortgage. Elaine's intent to provide the same amount to Duncan and petitioner could only be accomplished if the trust term "fair market value" was deemed to mean net proceeds of the sale of the home. The probate court did not err in considering Garvey's deposition to determine the trust's meaning of "fair market value."

## V. JUDICIAL DISQUALIFICATION

Finally, Deborah and Donna argue that the trial judge erred in setting aside his order to disqualify himself. We disagree.

"We review a trial court's factual findings regarding a motion for disqualification for an abuse of discretion and its application of the facts to the law de novo." *In re MKK*, 286 Mich App 546, 564; 781 NW2d 132 (2009). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id.* (internal quotation marks omitted).

At a hearing on Brian's motion to enter the judgment, the probate judge announced that he had a conflict because Deborah and Donna's counsel had been hired as the county probate court administrator and was continuing as their counsel. The judge stated he could not preside over the case even though he had already issued an opinion and recused himself from the case.

At a hearing on respondents' motion for reconsideration, the judge explained that trial counsel had been replaced, eliminating the conflict, so that the judge could now enter the judgment. The State Court Administrative Office had reassigned him to the case after the potential conflict was resolved when trial counsel was replaced.

A trial judge is presumed to be impartial and the party who asserts partiality has a heavy burden of overcoming that presumption. *Cain v Dep't of Corrections*, 451 Mich 470, 497; 548 NW2d 210 (1996). Grounds for disqualification are provided in MCR 2.003(C), which provides:

(1) Disqualification of a judge is warranted for reasons that include, but are not limited to, the following:

(a) The judge is biased or prejudiced for or against a party or attorney.

(b) The judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, 556 US 868; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct.

Respondents do not argue that the judge was biased or prejudiced against them. Instead, they argue that the judge left an appearance of impropriety by deciding issues that a probate court employee had argued.

The test for determining whether there is an appearance of impropriety is "whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired." *People v Aceval*, 486 Mich 887, 888-889; 781 NW2d 779 (2010), quoting *Caperton*, 129 S Ct at 2255. Here, it was not reasonable to conclude that the judge's judgment would be impaired because Deborah and Donna's former attorney now worked for the court. The judge had already issued his opinion prior to the probate court employment of their trial counsel and did not rule in the attorney's favor. The ultimate judgment and denial of a motion for reconsideration and a new trial were consistent with this original opinion. Accordingly, the judge did not err in reinstating himself after recusal.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto