JOHN CROSS *et al.*, Plaintiffs-Appellees, v. GILBERT L. PERRY CROSS, Defendant-Appellant (The Northern Trust Company, Defendant-Appellee; Delta Upsilon Fraternity, Defendant).

First District (3rd Division)   Nos. 88—1225, 88—1611 cons.

Opinion filed December 21, 1988.—Rehearing denied February 10, 1989.

Richard J. Prendergast, Ltd., and Michael C. Strening, Ltd., both of Chicago (Richard J. Prendergast, James Prendergast, and Michael J. Strening, of counsel), for appellant.

Robert K. Blain, of Altheimer & Gray, of Chicago, for appellees John Cross and Mark Cross.

Schuyler, Roche & Zwirner, of Chicago, for appellee Northern Trust Company.

JUSTICE McNAMARA delivered the opinion of the court:

In April 1984, decedent Mary M. Cross died, leaving her estate in trust and granting her son David Cross a testamentary power of appointment to distribute the estate under his will to a "descendant" of Mary. In May 1984, David adopted an adult, defendant Gilbert L. Perry Cross, as his son and executed a will exercising his power of appointment in favor of defendant as the grandson and "descendant" of Mary. In March 1985, David died. Plaintiffs John and Mark Cross, Mary's nephews by marriage, filed this action seeking a declaration that they, and not defendant, are the current beneficiaries of Mary's trust. The trial court entered summary judgment in favor of plaintiffs, finding that defendant could not take as a descendant of Mary. Defendant appeals.

Counterplaintiff Northern Trust Company, as trustee under May's trust, also sought a declaratory judgment regarding Gilbert's request that the trust pay David's medical and funeral expenses. The trial court ordered the trust not to pay those expenses. On appeal, Northern Trust seeks direction regarding this issue.

On August 1, 1978, decedent executed a trust naming her son David as the principal beneficiary, and amendments were made on January 23, 1979, and July 1, 1982. David was to receive income from the trust during his lifetime. On the tenth anniversary of decedent's death, David could "withdraw any part or all of the principal in his share at any time or times." The trust granted a special and exclusive power of appointment in favor of David to distribute the trust estate through his will. Any portion not effectively appointed by David would be divided equally between plaintiffs as takers in default. The trust provided:

> "Upon the death of my son if he survives me, the Trust Estate as then constituted shall be held in trust hereunder or distributed to or in Trust for such one or more of my descendants and their respective spouses and charitable, scientific or educa-

tional purposes, with such powers and in such manner and proportions as my son may appoint by his will making specific reference to this power of appointment.

Upon the death of my son any part of the Trust Estate not effectively appointed (or upon my death if my son does not survive me), the Trust Estate shall be divided into equal shares to create one share for each of my late husband's nephews, JOHN CROSS of Bonita, California, and MARK CROSS, currently residing in Indonesia, as are then living and one share for the then living descendants, collectively, of each aforementioned nephew who may then be deceased."

On April 10, 1984, decedent died. On May 9, 1984, 49-year-old David legally adopted the 36-year-old defendant as his son in a Texas proceeding. On May 18, 1984, David exercised the testamentary power of appointment in favor of defendant. On March 15, 1985, David died leaving defendant as his sole heir.

On September 26, 1985, plaintiffs filed this declaratory judgment action challenging the exercise of David's power of appointment in favor of defendant and seeking a declaration that plaintiffs were the present beneficiaries of the trust.

In October 1985, Northern Trust received a letter from defendant requesting payment from the trust of David's medical and funeral expenses. The trust provides that the trustee "may also pay to [David] such sums from the principal as the trustee deems necessary or advisable from time to time for his health and maintenance in reasonable comfort."

All parties moved for summary judgment. The trial court held that defendant was not a "descendant" of decedent and thus was not within the class of persons in whose favor David could exercise the power of appointment. The trial court entered summary judgment in favor of plaintiffs and against defendant. The court entered summary judgment in favor of Northern Trust providing that as trustee it had no obligation and should not pay David's medical or funeral expenses.

■ In construing Mary's testamentary instrument, this court must try to effectuate the intent of the settlor or trustee. (*Daly v. Daly* (1921), 299 Ill. 268, 132 N.E. 495; *Ludwig v. Sommer* (1964), 53 Ill. App. 2d 72, 202 N.E.2d 337.) Mary limits any effective appointment to her descendants. If she had intended that David could appoint anyone he chose, the words "my descendants" would be mere surplusage. The trust instrument demonstrates that Mary intended her estate to remain in her family unless her family chose to give it to charity. Mary was aware of defendant's 17-year residence with her

son and could have made him a permitted appointee or provided for him separately in the trust. She chose not to do so, even though she twice amended the trust.

■■ To permit David to select by "adoption" the one to take his mother's estate under the trust, when his mother clearly never contemplated such a result, would require us to completely disregard the intent of the trust language. (See, *e.g.*, *Woods v. Crump* (1940), 283 Ky. 675, 142 S.W.2d 680.) While no Illinois decision has addressed the use of an adult adoption to defeat a settlor's intentions, we agree with the courts of other jurisdictions which have prohibited such a practice. The adoption of an adult solely for the purpose of making him an heir of an ancestor under the terms of a testamentary instrument known and in existence at the time of the adoption is an act of subterfuge. (See *Minary v. Citizens Fidelity Bank & Trust Co.* (Ky. 1967), 419 S.W.2d 340.) This practice does great violence to the intent and purpose of our adoption laws and should not be permitted. (*Minary v. Citizens Fidelity Bank & Trust Co.* (Ky. 1967), 419 S.W.2d 340.) If there had been no trust, there would undoubtedly have been no adoption. *In re Estate of Griswold* (1976), 140 N.J. Super. 35, 354 A.2d 717; see also *In re Nowels Estate* (1983), 128 Mich. App. 174, 339 N.W.2d 861 (while terms of trust do not evidence an intent to exclude adopted persons generally, the court is convinced it should not enforce such a statutory presumption where there has been an abuse of the adoption process and the end result would violate the settlor's probable intent and normal expectations).

We have found no case, nor does defendant cite one, where the adoption of an adult for purposes of defeating a testator's or settlor's intention has been upheld. We cannot condone such a use of the adoption process. See *First National Bank v. Mackey* (Iowa 1983), 338 N.W.2d 361; *Estate of Tafel* (1972), 449 Pa. 442, 296 A.2d 797; *Foster v. Foster* (Tex. Ct. App. 1982), 641 S.W.2d 693; *Estate of Nicol* (1977), 152 N.J. Super. 308, 377 A.2d 1201; *Estate of Comly* (1966), 90 N.J. Super. 498, 218 A.2d 175.

Defendant relies on the Illinois Probate Act's language concerning adoptees. Prior to 1955, a presumption existed that adopted children would not inherit property from the lineal or collateral kindred of the adopting parents. (*Wielert v. Larson* (1980), 84 Ill. App. 3d 151, 404 N.E.2d 1111.) Under the present Act, however, the presumption runs in favor of the adoptee. Thus, an adopted child is the "descendant of the adopting parent for purpose of inheritance from the adopting parent and from the lineal and collateral kindred of the adopting parent." (Ill. Rev. Stat. 1985, ch. 110½, par. 2—4(a).) That language only

applies, however, where a contrary intention is not plainly shown. (*Wielert v. Larson* (1980), 84 Ill. App. 3d 151, 404 N.E.2d 1111.) Here, we have found that the trust plainly shows a contrary intention. Moreover, that statute concerns inheritance rights and not powers of appointment under a trust. Thus, we decline to explore any issues regarding whether the section 2—4(a) language permits an adoptee to inherit from the lineal and collateral kindred of the adopting parent.

■ Defendant argues that extrinsic facts show the adoption was motivated by traditional parental desires and not an intent to disrupt Mary's testamentary intent. While we find it unnecessary to review extrinsic facts here (see *In re Estate of Hughlett* (1983), 113 Ill. App. 3d 910, 446 N.E.2d 887), we note that such an argument is not persuasive in the light of the record presented to us. Defendant and David lived together for nearly 17 years without ever attempting an adoption. Less than one month after Mary's death, David adopted defendant. Nine days later, he executed a will naming defendant as Mary's new grandson. Moreover, defendant's own deposition testimony refers to a conversation defendant and David had with David's attorney after Mary's death. The attorney "jokingly" suggested they think of adoption. "[W]e though it was a joke at first and then found out it could be done that way."

We hold that the trial court properly found that defendant cannot take under the trust as a "descendant" of Mary.

■ In regard to the issue of David's medical and funeral expenses, however, we note that the trust language expressly includes sums for David's "health and maintenance in reasonable comfort." We believe this language includes the medical expenses related to David's final illness. The trust does not contemplate payment of David's funeral expenses.

For the foregoing reasons, we affirm the circuit court of Cook County's order entering summary judgment in favor of plaintiffs; affirm the order directing the trustee not to pay funeral expenses; reverse the order directing the trustee not to pay medical expenses and remand with directions that the trustee pay the medical expenses of David Cross.

Affirmed in part; reversed in part and remanded with directions.

RIZZI and FREEMAN, JJ., concur.