# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**_Faville v. Burns_, 2011 IL App (1st) 110335**

---

| | |
|---|---|
| Appellate Court Caption | ANDREW M. FAVILLE and WILLIAM A. FAVILLE, JR., Plaintiffs-Appellants, v. MARTIN H. BURNS, JR., Individually and as Trustee of the Martin H. Burns, Sr., Trust, Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-11-0335 |
| Filed | September 30, 2011 |
| Rehearing denied | November 1, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action alleging that plaintiffs should be deemed descendants of their stepmother following their adult adoption by their stepmother in determining their rights under a trust established for her by her father and seeking the removal of their stepmother's brother as trustee of the trust based on a breach of fiduciary duty and the conflict of interest arising from the fact that he was an adverse remainder beneficiary of the trust, the trial court erred in relying on the amended version of section 2-4(a) of the Probate Act in dismissing plaintiffs' claim that they should be deemed descendants for failing to state a cause of action, and the dismissal of the count seeking the trustee's removal was reversed where plaintiffs' allegations were sufficient to state a cause of action for removal based on the conflict of interest. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-3428; the Hon. Kathleen M. Pantle, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on Appeal

Richard C. Johnson and Elizabeth A. McKillip, both of Ice Miller LLP, of Lisle, for appellants.

George N. Vurdelja, Jr., of Harrison & Held, LLP, of Chicago, for appellee.

Panel

JUSTICE HOWSE delivered the judgment of the court, with opinion.
Presiding Justice Epstein and Justice McBride concurred in the judgment and opinion.


**OPINION**

¶ 1    Plaintiffs Andrew Faville and William Faville filed an amended complaint for declaratory and injunctive relief against defendant Martin Burns in the circuit court, alleging plaintiffs should be deemed descendants of Barbara Burns Faville for purposes of determining their rights under the terms of a trust agreement. Plaintiffs also requested the circuit court remove defendant as trustee of the trust agreement based on a conflict of interest as an adverse remainder beneficiary and a breach of fiduciary duty. Defendant filed a motion under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2010)) to strike the amended complaint. The trial court granted defendant's motion to strike on January 5, 2011.

¶ 2    On appeal, plaintiffs contend the trial court erred in dismissing their claims based on a determination that section 2-4(a) of the Illinois Probate Act of 1975 (755 ILCS 5/2-4(a) (West 2010)), rather than section 2-4(f), applied with regard to whether plaintiffs were Barbara's descendants under the trust agreement. Plaintiffs also contend the trial court erred in dismissing their claim that defendant should be removed as trustee of the trust agreement. For the reasons that follow, we reverse the circuit court's order and remand the cause for further proceedings.

¶ 3                          BACKGROUND

¶ 4    Barbara Faville's father, Martin Burns, died in 1939. He left behind a "Last Will and Testament" dated August 19, 1939, which divided his estate into three separate trusts–one for his wife Miriam Burns, one for his son Martin Burns and one for his daughter Barbara. After Miriam died, her trust was divided equally between Martin and Barbara. Barbara was the sole beneficiary of the trust created for her benefit and was entitled to receive the "net income" derived from the trust for the remainder of her life. The principal of the trust was reserved for the remainderman. Following her death, the trust agreement outlined the remaining corpus of the trust would pass "to her then living descendants *per stirpes*."

¶ 5    Barbara appointed Martin as trustee of her trust in 1978. Plaintiffs alleged that sometime after Martin was appointed as trustee the relationship between Martin and Barbara "deteriorated." Before her death, Barbara requested that Martin resign as trustee. He refused to do so. Barbara then sought to revoke her designation of Martin as successor trustee and appoint American Bank and Trust Co. of St. Charles (American Bank) in his place on February 16, 2009. Martin refused to transfer the trust property to American Bank. On May 5, 2009, Barbara legally adopted Andrew and William Faville, her adult stepchildren who were in their 50s, in Florida. Andrew's and William's birth certificates were amended to reflect Barbara as their adopted mother, and the brothers provided notice to Martin of their status as adopted children. Prior to the adoptions, Martin was considered the sole remainderman of the trust under the trust agreement's terms.

¶ 6    On January 26, 2010, Barbara filed a declaratory judgment action against Martin, seeking a declaration that she has the power under the trust agreement to remove Martin as trustee. The complaint also sought a declaration that her adopted children, Andrew and William, are her descendants for purposes of distributing the trust. After Barbara passed away on February 28, 2010, Andrew and William filed an amended complaint naming themselves as plaintiffs in the declaratory judgment action. Plaintiffs sought a declaration that they were Barbara's "descendants" under the trust agreement. Plaintiffs also sought Martin's removal as trustee and a preliminary injunction barring Martin from dissipating the trust's assets prior to resolution of the action.

¶ 7    In support of their contention that Martin should be removed as trustee for good cause, plaintiffs noted Martin has "failed to produce sufficient income and has breached his fiduciary duties to the beneficiaries of the Trust." Plaintiffs alleged that instead of maximizing the investment potential of the trust assets, Martin had placed the assets in low-yielding accounts intended to preserve the trust's principal instead of maximizing investment returns. Plaintiffs also alleged Martin had a conflict of interest because he considers himself to be the sole remainderman of the trust, despite notice of Barbara's legal adoption of plaintiffs as her children.

¶ 8    Martin filed a section 2-615 motion to strike the amended complaint, alleging section 2-4(a) of the Act provides plaintiffs should not be considered Barbara's "descendants" for purposes of the trust agreement because they were adopted after attaining the age of 18 and never resided with the adopting parent before attaining the age of 18. Martin also contended plaintiffs' request to remove him as trustee should also be dismissed because plaintiffs had no standing and Martin had not breached his fiduciary duties as trustee.

¶ 9    Plaintiffs countered in their answer to the section 2-615 motion that section 2-4(f) of the Act, not section 2-4(a), should apply to the trust agreement because the instrument was created before September 1, 1955. Plaintiffs alleged that under section 2-4(f) of the Act, they should presumptively be considered Barbara's descendants for purposes of the trust agreement unless such a presumption could be rebutted by clear and convincing evidence.

¶ 10   The trial court granted Martin's motion to dismiss plaintiffs' claims, finding section 2-4(a), not section 2-4(f), of the Act applied to the claims because it is the more specific provision in the statute. The court also rejected plaintiffs' contention that section 2-4(a) only

applies in situations where there is proof of an adoption done in bad faith, *i.e.*, where the adult adoption was performed strictly for purposes of making the adoptee an heir. The trial court also determined count II did not state a valid cause of action under the prudent investor rule, finding there was no requirement the trustee produce "sufficient income" or maximize the investment potential of the trust assets. The court also noted plaintiffs had not alleged any facts to show Martin's conduct amounted to an abuse of the broad discretion granted to him under the trust agreement's terms. Plaintiffs appeal.

¶ 11                                                  ANALYSIS

¶ 12        A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face. 735 ILCS 5/2-615 (West 2010); *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 364 (2004). In reviewing the sufficiency of a complaint, we construe the complaint's allegations in the light most favorable to the plaintiff. *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 11-12 (2005). We also accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. *Beretta U.S.A Corp.*, 213 Ill. 2d at 364. A claim should not be dismissed unless it is clearly apparent that no set of facts can be proven that would entitle the plaintiff to recovery. *Canel v. Topinka*, 212 Ill. 2d 311, 318 (2004).

¶ 13        We review a trial court's grant of a section 2-615 motion to dismiss *de novo*. *Chandler v. Illinois Central R.R. Co.*, 207 Ill. 2d 331, 349 (2003).

¶ 14                                              I. Probate Act

¶ 15        Plaintiffs contend the trial court erred in determining section 2-4(a), rather than section 2-4(f), of the Probate Act applied to plaintiffs' claim when considering whether plaintiffs could establish they were Barbara's descendants for purposes of the trust agreement.

¶ 16        Questions of statutory interpretation are issues of law reviewed *de novo*. *In re Application of the County Collector*, 356 Ill. App. 3d 668, 670 (2005). The primary rule in statutory interpretation is to determine and effectuate the intent of the legislature. *In re Application of the County Collector*, 356 Ill. App. 3d at 670. The best indication of legislative intent is the language of the statute. *U.S. Bank National Ass'n v. Clark*, 216 Ill. 2d 334, 346 (2005).

¶ 17        Words in the statute should be construed in context and given their plain and ordinary meaning. *In re Application of the County Collector*, 356 Ill. App. 3d at 670; *Clark*, 216 Ill. 2d at 346. We will not read into a statute any exceptions, limitations, or conditions that were not expressed by the legislature. *Hudson v. YMCA of Metropolitan Chicago, LLC*, 377 Ill. App. 3d 631, 635 (2007). Where a statute's meaning is unclear from a reading of its language, we may look beyond the statutory language and consider the purpose of the law, the evils it was intended to remedy, and the legislative history of the statute. *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 181 (2007).

¶ 18        A court presumes the legislature intended that two or more statutes which relate to the same subject are to be read harmoniously so that no provisions are rendered inoperative.

*Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 458-59 (2002). "Even when an apparent conflict between statutes exists, they must be construed in harmony with one another if reasonably possible." *Knolls Condominium Ass'n*, 202 Ill. 2d at 459. However, it is a fundamental rule of statutory construction that where there exists a general statutory provision and a specific statutory provision both relating to the same subject–either in the same or another act–the specific provision controls and should be applied. *Knolls Condominium Ass'n*, 202 Ill. 2d at 459 (citing *People v. Villarreal*, 152 Ill. 2d 368, 379 (1992)).

¶ 19   Section 2-4(f) of the Act provides, in relevant part:

"After September 30, 1989, a child adopted at any time before or after that date is deemed a child born to the adopting parent for the purpose of determining the property rights of any person under any instrument executed before September 1, 1955, unless one or more of the following conditions applies:

(1) The intent to exclude such child is demonstrated by the terms of the instrument by clear and convincing evidence.

(2) An adopting parent of an adopted child, in the belief that the adopted child would not take property under an instrument executed before September 1, 1955, acted to substantially benefit such adopted child when compared to the benefits conferred by such parent on the child or children born to the adopting parent." 755 ILCS 5/2-4(f) (West 2010).

¶ 20   However, section 2-4(a) of the Act provides, in relevant part:

"An adopted child is a descendant of the adopting parent for purposes of inheritance from the adopting parent and from the lineal and collateral kindred of the adopting parent and for the purpose of determining the property rights of any person under any instrument, unless the adopted child is adopted after attaining the age of 18 years and the child never resided with the adopting parent before attaining the age of 18 years, in which case the adopted child is a child of the adopting parent but is not a descendant of the adopting parent for purposes of inheriting from the lineal or collateral kindred of the adopting parent. *** For purposes of inheritance, the changes made by this amendatory Act of 1997 apply to all decedents who die on or after January 1, 1998. For the purposes of determining the property rights of any person under any instrument, the changes made by this amendatory Act of 1997 apply to all instruments executed on or after January 1, 1998." 755 ILCS 5/2-4(a) (West 2010).

¶ 21   Although the trial court found section 2-4(a) is the more specific and recently passed statute with regard to how adopted children who have already attained the age of 18 at the time of the adoption should be treated for purposes of disposing of an estate under the Probate Act, plaintiffs correctly note the trial court did not address whether the 1997 amendments to section 2-4(a) properly applied to plaintiffs in this case given the fact that the trust agreement was executed before January 1, 1998. To the extent Martin contends plaintiffs waived consideration of the issue by failing to raise it in their initial answer to Martin's section 2-615 motion, we note plaintiffs adequately preserved the issue by raising

it in the trial court during the hearing below on Martin's motion to dismiss. Contrary to Martin's contention, plaintiffs are not raising the issue for the first time on appeal.

¶ 22    The legislature amended section 2-4(a) in 1997, adding language providing that "unless the adopted child is adopted after attaining the age of 18 years and the child never resided with the adopting parent before attaining the age of 18 years, in which case the adopted child is a child of the adopting parent but is not a descendant of the adopting parent for purposes of inheriting from the lineal or collateral kindred of the adopting parent." Pub. Act 90-237 (eff. Jan. 1, 1998) (amending 755 ILCS 5/2-4(a) (West 1996)). Both parties recognize the legislative amendment was intended to codify the holding reached in *Cross v. Cross*, 177 Ill. App. 3d 588, 591 (1988), where this court determined "[t]he adoption of an adult solely for the purpose of making him an heir of an ancestor under the terms of a testamentary instrument known and in existence at the time of the adoption is an act of subterfuge." In reaching its decision, the court recognized in part that the presumption in favor of adoptees found in section 2-4(e) of the Act did not apply because "that statute concerns *inheritance* rights and not powers of appointment under a *trust*." (Emphasis added.) *Cross*, 177 Ill. App. 3d at 592.

¶ 23    The 1997 legislative amendment makes clear that "[f]or purposes of *inheritance*, the changes made by this amendatory Act of 1997 apply to all decedents who die on or after January 1, 1998." (Emphasis added.) Pub. Act 90-237 (eff. Jan. 1, 1998) (amending 755 ILCS 5/2-4(a) (West 1996)). However, the 1997 legislative amendment to section 2-4(a) also makes clear that "[f]or the purposes of determining the property rights of *any person* under any *instrument*, the changes made by this amendatory Act of 1997 *apply to all instruments executed on or after January 1, 1998*." (Emphasis added.) Pub. Act 90-237 (eff. Jan. 1, 1998) (amending 755 ILCS 5/2-4(a) (West 1996)).

¶ 24    Here, the trial court was clearly asked to determine the property rights of plaintiffs under the terms of the trust agreement–*i.e.*, an instrument–created in 1939. Because section 2-4(a)'s plain language makes clear the 1997 amendments to the Act are only intended to apply "[f]or the purposes of determining the property rights of any person under any instrument executed on or after January 1, 1998," we find the amended version of section 2-4(a) simply does not apply to plaintiffs' property-rights claims under the 1939 trust instrument's terms.

¶ 25    Notwithstanding, Martin contends plaintiffs' alleged rights under the trust agreement at issue here are intended to fall under the terms "for purposes of inheritance" as used by the legislature in section 2-4(a).

¶ 26    Although section 2-4 of the Act does not specifically define "inheritance" and "instrument," the legislature's use of "inheritance" and "instrument" as completely separate concepts in multiple places throughout section 2-4's subsections strongly indicates it intended the terms to have separate and distinct meanings. Moreover, the term "instrument," as used throughout section 2-4 of the Act, has also been interpreted by Illinois courts as a term intended by the legislature to encompass both trust agreements and testamentary documents. See, *e.g., Altenheim German Home v. Bank of America, N.A.*, 376 Ill. App. 3d 26, 38-39 (2007) ("By using the broad term 'written instruments' [in amending section 2-4 of the Act], which encompasses both testamentary documents and trust agreements, we

concluded that the legislature intended to change the presumption in the contexts of both inheritance and trusts."). It seems clear to us that the language "for purposes of inheritance" was intended to apply only to "intestate" deaths; or, in other words, situations where the decedent dies without making a will or instrument for the disposal of her estate after her death.

¶ 27 Section 2-4(f) of the Act, on the other hand, creates a rebuttable presumption in favor of including adoptees under an "instrument." *In re Estate of Roller*, 377 Ill. App. 3d 572, 582 (2007). The plain language of section 2-4(f) makes clear that "a child adopted at any time before or after that date is deemed a child born to the adopting parent for the purpose of determining the property rights of any person under any instrument executed before September 1, 1955," unless either of the two exceptions noted in the subsection applies. 755 ILCS 5/2-4(f) (West 2010). Our supreme court has recognized " 'section 2-4(f) expands a statutory presumption, applicable to the determination of property rights under written instruments, that *no* distinction is to be drawn between adopted children and *natural* offspring.' " (Emphasis in original.) *In re Estate of Roller*, 377 Ill. App. 3d at 582 (quoting *First National Bank of Chicago v. King*, 165 Ill. 2d 533, 538 (1995)).

¶ 28 Although we recognize section 2-4(f) refers to a "child" being adopted rather than a "person" or an "adult," we note courts have recognized the legislature's use of the term "child" in other subsections of the Act was not meant to refer only to minors. See *In re Estate of Brittin*, 279 Ill. App. 3d 512, 517 (1996) ("Considering the subject matter and context in which the word 'child' is used in [the pre-1997 version of] section 2-4(a), the plain language of the statute indicates that the legislature intended to use the word 'child' in its relational sense; referring to the parent-child relationship between the adoptee and the adopting parent. The word 'child,' as used here, cannot be interpreted fairly as meaning a minor, in light of section 3 of the Adoption Act, which permits adult adoptions. *** [T]here is nothing in section 2-4(a) indicating a distinction between the adoptee's status as an adult or a minor at the time of adoption with regard to the adoptee's classification as a descendant of the adopting parent. The only qualification set forth in the statute is that the adoptee be legally adopted. Nothing more is required."). Similar to the pre-amended version of section 2-4(a) discussed in *Brittin*, nothing in section 2-4(f) indicates the legislature intended a distinction between whether the adoptee was an adult or a minor at the time of adoption when determining the adoptee's property rights under an instrument.

¶ 29 While section 2-4(f)'s presumption in favor of including adoptees as heirs under a written instrument may be rebutted, Martin has not alleged clear and convincing evidence to demonstrate the terms of the trust agreement intended such a result. See 755 ILCS 5/2-4(f) (West 2008) ("The intent to exclude such child is demonstrated by the terms of the instrument by clear and convincing evidence."). Nor has Martin alleged Barbara, in the belief that plaintiffs would not take property under an instrument executed before September 1, 1955, acted to substantially benefit plaintiffs through the adoption when compared to the benefits conferred to other children actually born to her. Accordingly, we find section 2-4(f) is the statutory provision that should apply in this case when determining whether plaintiffs are Barbara's "descendants" under the terms of the trust agreement

¶ 30 Because section 2-4(a)'s plain language indicates the 1997 amendments to the Act simply

do not apply to the 1939 trust instrument at issue in this case, we find the trial court erred in relying on the 1997 amended version of section 2-4(a) to dismiss count I of plaintiffs' complaint for failing to state a cause of action.

¶ 31                                II. Removal of Trustee

¶ 32       Plaintiffs contend the trial court erred in dismissing count II of their complaint, which sought the removal of Martin as trustee of Barbara's trust and the appointment of a successor trustee. Plaintiffs contend Martin has a conflict of interest in administering the trust as a contingent remainderman of the trust's principal. Plaintiffs also contend Martin should be removed based on his violation of the prudent investor rule. In support of their contentions, plaintiffs alleged below that "[i]nstead of maximizing the investment potential of the Trust assets, Martin has placed the assets in low yielding accounts, thereby significantly reducing its value." The record reflects the investment account in which the trust assets are held pays only an estimated 2.53% per annum.

¶ 33                               A. Prudent Investor Rule

¶ 34       The prudent investor rule provides, in relevant part:

> "(1) The trustee has a duty to invest and manage trust assets as a prudent investor would considering the purposes, terms, distribution requirements, and other circumstances of the trust. This standard requires the exercise of reasonable care, skill, and caution and is to be applied to investments not in isolation, but in the context of the trust portfolio as a whole and as a part of an overall investment strategy that should incorporate risk and return objectives reasonably suitable to the trust.
>
> (2) No specific investment or course of action is, taken alone, prudent or imprudent. The trustee may invest in every kind of property and type of investment, subject to this Section. The trustee's investment decisions and actions are to be judged in terms of the trustee's reasonable business judgment regarding the anticipated effect on the trust portfolio as a whole under the facts and circumstances prevailing at the time of the decision or action. The prudent investor rule is a test of conduct and not of resulting performance." 760 ILCS 5/5(1), (2) (West 2008).

¶ 35       A trustee is expected to exercise the same degree of care in managing a trust as persons of prudence and intelligence would exercise in their own affairs. *Laubner v. JP Morgan Chase Bank, N.A.*, 386 Ill. App. 3d 457, 463 (2008). "The trustee must be mindful of the beneficiaries' interests, and the trustee cannot act inconsistently with the beneficiaries' interests, irrespective of the trustee's good or bad faith." *Laubner*, 386 Ill. App. 3d at 464. That said, a court will not interfere with a trustee's exercise of discretion given to him by the trust instrument so long as the trustee does not act in a wholly unreasonable and arbitrary manner. *Laubner*, 386 Ill. App. 3d at 464.

¶ 36       The trust at issue here confers considerable discretion upon the trustee with regard to handling the trust assets. Specifically, the trust agreement notes the trustee "shall have full

power in their sole and uncontrolled judgment and discretion." The trust agreement also notes that in investing and reinvesting the trust asset, the trustee "shall not be limited by any restrictions imposed by any rule or law or by the statutes of the State of Illinois or of any other jurisdiction."

¶ 37    Keeping in mind the rather broad discretion granted to the trustee under the 1939 trust agreement, we note plaintiffs have not pled sufficient facts to establish Martin has abused his discretion in how he has chosen to invest the trust assets. Plaintiffs suggest the fact that the investment account in which the trust assets are held pays only an estimated 2.53% per annum to the trust beneficiary reflects Martin has violated the prudent investor rule by seeking to improperly preserve the trust principal for himself as a contingent remainderman of the trust principal. As the trial court properly noted, however, nothing in the trust document itself requires the trustee to produce a certain level of income for the beneficiary or to maximize the investment potential of the trust assets. Moreover, the prudent investor rule is intended to be "a test of conduct and not of resulting performance" of the trust. 760 ILCS 5/5(2) (West 2008). Plaintiffs' claims focus solely on the resulting performance of Martin's investments as trustee, not his actual conduct as trustee in making those investments.

¶ 38    Accordingly, we find the trial court did not err in finding plaintiffs failed to establish a cause of action under the prudent investor rule. See *Laubner*, 386 Ill. App. 3d at 464 ("We cannot say the cotrustees are acting in a 'wholly unreasonable and arbitrary' manner because they have sought to protect the principal of the trust, especially where they continue to distribute the substantial sum of $11,500 per month to each plaintiff ***.").

¶ 39                              B. Conflict of Interest

¶ 40    Generally, a trustee owes a fiduciary duty to a trust's beneficiaries and is obligated to carry out the trust according to its terms and to act with the highest degree of fidelity and utmost good faith. *Dick v. Peoples Mid-Illinois Corp.*, 242 Ill. App. 3d 297, 303 (1993). Further, a trustee owes a fiduciary duty to serve the interests of the beneficiaries with total loyalty, excluding all self-interest, and is prohibited from dealing with the trust's benefit for his own individual benefit. *Dick*, 242 Ill. App. 3d at 303-04.

¶ 41    "It is a well-settled rule of law in this State that a trustee may not engage in any form of self-dealing with the trust [citation] or place himself in a position where his interests conflict with those of the trust beneficiaries [citation]." *In re Estate of Hawley*, 183 Ill. App. 3d 107, 109 (1989). However, a well-recognized exception to this rule exists where the instrument creating the trust expressly contemplates, creates and sanctions such a conflict of interest. *In re Estate of Hawley*, 183 Ill. App. 3d at 109.

¶ 42    Here, plaintiffs contend they have sufficiently stated a cause of action for removing Martin as trustee for good cause based on an alleged conflict of interest. Specifically, plaintiffs alleged Martin's status as a possible contingent remainderman of the trust's assets creates a potential conflict of interest with other potential beneficiaries of the trust that renders him unfit to serve as trustee. In support, plaintiffs alleged that Martin has indicated he will refuse to acknowledge Barbara's adoption of her stepchildren and what impact that

may have on her trust, and that he considers himself to be the sole remainderman of the trust principal despite notice of the adoptions. We agree.

¶ 43    Although very few cases directly address the alleged conflict presented here, our supreme court has previously noted it is proper for a court to remove a contingent remainderman as an appointed successor trustee due to the inherent conflict between the trustee's contingent interest in the trust remainder versus the interest a life beneficiary may have under the trust, especially where the life beneficiary specifically objects to the trustee's appointment. See *Lorenz v. Weller*, 267 Ill. 230 (1915); *Yates v. Yates*, 255 Ill. 66, 74 (1912). Moreover, although personal hostility between a trustee and a beneficiary is not a *per se* ground for removal of the trustee, courts have recognized removal may be warranted where the " 'hostilities of the parties combine with other circumstances to render removal of the trustee essential to the interests of the beneficiary and the execution of the trust.' " *Laubner*, 386 Ill. App. 3d at 467 (quoting *Rennacker v. Rennacker*, 156 Ill. App. 3d 712, 715 (1987)).

¶ 44    Here, similar to *Yates*, Martin–a contingent remainderman of the trust principal–was appointed as a successor trustee of Barbara's interest in the trust after the prior trustee resigned. Prior to her death, Barbara sought the removal of Martin as successor trustee based in part on the fact that his status as a contingent remainderman under the trust agreement created a conflict of interest with other potential beneficiaries of the trust, which she alleged was evidenced by Martin's refusal to acknowledge the legal adoption of plaintiffs as her children. Barbara's declaratory judgment action also alleged that the relationship between her and Martin had "deteriorated" and that they were "estranged and rarely communicate with one another" to the point where he should no longer act as trustee. Following Barbara's death, plaintiffs–as potential beneficiaries under the terms of the trust as Barbara's legally adopted children–continued to seek Martin's removal based on the alleged conflict of interest created between themselves as potential beneficiaries and Martin as a contingent remainderman of the trust principal.

¶ 45    Based on the fact that Martin's status as both a trustee and a contingent remainderman of the trust could present a direct conflict of interest with other potential beneficiaries under the trust agreement, we find plaintiffs' allegations are sufficient to state a cause of action as to whether Martin should be removed as trustee for good cause based on the conflict. See *Yates*, 255 Ill. at 74. Accordingly, we find the trial court erred in dismissing count II of plaintiffs' complaint under section 2-615 of the Code.

¶ 46                                    CONCLUSION

¶ 47    We reverse the trial court's dismissal order and remand the cause for further proceedings consistent with this opinion.

¶ 48    Reversed and remanded.

-10-